## FAIN v. FAIN. (No. 9111.)

Court of Civil Appeals of Texas. Galveston.
April 18, 1928.

Rehearing Denied May 10, 1928.

1. **Divorce ⬉88, 249(1)—Court in divorce suit had authority to construe pleadings liberally and make division of property (Rev. St. 1925, art. 4638).**

In suit for divorce, court, under Rev. St. 1925, art. 4638, had authority to construe pleadings more liberally than in other civil cases, and could proceed upon its independent and additional findings and determinations, in addition to jury's verdict, to make division of separate and community property.

2. **Appeal and error ⬉930(3)—Finding, supported by evidence, will be implied, if necessary to support judgment.**

Finding, which is supported by sufficient evidence, will be deemed to have been made by the trial court, if necessary to support the judgment.

3. **Divorce ⬉250—Where wife suing for divorce alleged and proved that her conveyances of mineral lands to defendants were without consideration, court could decline to enforce them (Rev. St. 1925, art. 4638).**

Where, in suit for divorce, wife alleged and proved, and court found, that power of attorney and conveyances of oil and mineral lands constituting wife's separate property were without consideration from husband and other defendant to whom the transfers were made, court had authority, in dissolving marriage relation, to refuse to enforce such instruments as valid contractual obligations in favor of husband, under Rev. St. 1925, art. 4638.

4. **Courts ⬉18—Judgment in divorce suit restraining recordation of wife's conveyance of Mexican mineral lands to defendants, and enjoining defendants from asserting title to proceeds, held effective as judgment in personam.**

In wife's suit for divorce and division of property, judgment of trial court enjoining recording or registering of instruments conveying interest in oil and mineral lands in Mexico to defendants as trustees, and decreeing that stock in association, in whose behalf the conveyance was made, should be personal property of the wife, and that defendants should be enjoined from asserting title thereto or to proceeds of other lands conveyed by wife, *held* operative and effective as decree in personam.

5. **Judgment ⬉707—Decree in divorce suit, restraining defendants from asserting ownership of stock in association under conveyance to them of wife's property, held not to prejudice other shareholders.**

Decree in divorce suit, restraining husband and another defendant from asserting interest in stock of association as trustees under wife's conveyance of mineral property, *held* not to prejudice interest of other shareholders in the association who were not parties to the suit.

6. **Divorce ⬉282—Alleged nonjoinder of parties was not considered on appeal, where first objected to on motion for new trial (Rev. St. 1925, art. 1992).**

In divorce suit involving wife's claim to stock in association under conveyance to defendants as trustees of certain mineral lands, failure to join other stockholders in the association, where question was not raised until time of amended motion for new trial, was waived, and could not be urged upon appeal under Rev. St. 1925, art. 1992.

7. **Divorce ⬉254—Decree adjudicating wife's sole ownership of proceeds of conveyance held authorized under pleadings which showed property was wife's separate estate and that no consideration was given her for alienation.**

Where wife's pleadings in her suit for divorce challenged right of husband and another

---

to retain beneficial interest in properties held between them under conveyance on ground that they were her separate property and that no consideration was given for their alienation, and where evidence substantiated such allegations, judgment enjoining recording of instruments and enjoining husband and codefendant from asserting any claim to stock in association in whose behalf they took land as trustees, and decreeing wife's ownership of the stock, was authorized.

**8. Divorce ⚖==286—Defendant, failing to appeal from part of judgment dealing with community property, could not complain that costs relating thereto were taxed against him.**

In divorce suit, defendant, who failed to bring up for review part of judgment dealing with community property, could not complain that costs relating thereto were taxed against him.

**9. Divorce ⚖==188—Costs held discretionary.**

In divorce suit matter of taxation of costs *held* within the sound discretion of the trial court.

**10. Appeal and error ⚖==1051(1)—Alleged error in admission of deed was harmless, where fact shown was otherwise conclusively established.**

Alleged error in admission of copy of deed as secondary evidence was harmless, where fact attempted to be shown was conclusively established by other evidence.

**11. Divorce ⚖==184(12)—Exclusion of defendant's testimony held not prejudicial, where substantially identical testimony was admitted and defendant could not have recovered on issue involved.**

Ruling of trial court, excluding witness' testimony in divorce suit, in connection with letter sought to be introduced to show wife's improper conduct, *held* not prejudicial, where material substance of excluded testimony was admitted at other times during the trial, and where evidence showed that husband either did not believe charges to be true or else had condoned any improper conduct on wife's part.

Error from District Court, Harris County; Ewing Boyd, Judge.

Suit by Venustina G. Fain against Jesse C. Fain and another, in which named defendant asserted a cross-action. Judgment for plaintiff, and defendant named brings error. Affirmed.

Carothers & Brown, of Houston, for plaintiff in error.

Huggins, Kayser & Liddell, of Houston, for defendant in error.

GRAVES, J. With the wife as the initiator, and each spouse not only denying the other's charges of cruel treatment, but preferring individual ones as a predicate for separate affirmative relief, this action was one for divorce, custody, of their 4 year old daughter, and adjustment of property rights, between Mr. and Mrs. Fain. Mrs. Fain further sought the cancellation of certain instruments alleged to affect her separate property, which she averred had been procured from her by fraud and without consideration of any sort, making W. S. Weaver a party upon that feature, upon allegations of his participation therein.

Following a verdict on special issues, Mrs. Fain's cross-action was denied, much enumerated personalty, as being the only community property owned by the husband and wife, was ordered partitioned through commissioners, and a divorce, with exclusive custody of the child, was granted to Mrs. Fain; this additional relief affecting the remaining property being awarded in her favor:

(1) That she recover, free from any community claim on his part, the homestead at Webster, Tex., the outstanding and jointly signed purchase-money notes against it to become her separate obligation, with provision for the subrogation of Mr. Fain to the lien of the holder thereof, should he be compelled to pay any part of this indebtedness, except as to such payments as he might make thereon out of the income derived from a certain oil development contract affecting their lands in Mexico of November 16, 1921, between the heirs of her deceased father, as first parties, and the Mexican Petroleum Company et al., as second parties.

(2) After recitation to the effect that these five instruments had been executed by the parties thereto on the several dates thereof, as well as recorded in the appropriate records of Harris County, Texas, and were then in the registry of the court, pursuant to its prior order to that effect (1) a general power of attorney from Mrs. Fain to Mr. Fain of December 15, 1920, (2) a 99-year lease and sale from Mrs. Fain to Mr. Fain of 120 hectares of land in Mexico of April 20, 1921, (3) an oil lease on 20 acres of this 120 from Mr. Fain to Jensen & Jensen of October 27, 1921, and on December 28, 1921, conveyed back to him by them for a recited consideration of $1, (4) a declaration of trust creating an association known as "Standard Royalties of Mexico, Limited," etc., from Mr. and Mrs. Fain and W. S. Weaver of April 26, 1921, (5) a conveyance from Mr. and Mrs. Fain of a one-sixteenth of all the mineral rights in a certain hacienda in Mexico, known as the Cierro Viego, to themselves and W. S. Weaver as trustees for this association named "Standard Royalties," etc., of April 26, 1921, the decree proceeds:

"It is further the judgment of the court, and it is so ordered, that said instruments be impounded and committed to the custody of the clerk of this court, and that they (defendants) be enjoined from recording, registering, or attempting to record or register, the same or any copies thereof.

"It is the further judgment of the court that, as between the plaintiff and both of the defendants, all of the certificates of stock of the

⚖==For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Standard Royalties of Mexico, Limited, which have been issued either to the plaintiff or the defendants, and which are now standing in either the name of the plaintiff or the defendants, as well as any unissued stock, be and the same are hereby declared to be the separate personal property of the plaintiff, and the defendants and each of them are hereby perpetually enjoined from asserting any claim of them, are hereby perpetually enjoined from asserting any claim under or by virtue thereof, or from interfering with the plaintiff in her control, possession, and authority with respect thereof, and that the stock certificates now in evidence in this case and now in the registry of the court, be and the same are hereby delivered to the plaintiff.

"With respect to the said contract executed by the plaintiff and her husband, Jesse C. Fain, and the other heirs of Gabriel A. Gorrechotegui, as parties of the first part, and the Mexican Petroleum Company el Aguila, Inc., and the Tuxpan Petroleum Company, as second parties, dated November 16, 1921, it is the judgment of the court, and the court finds and adjudges, that said contract and the proceeds thereof, due and to become due, are the separate property of the plaintiff.

"And it is further ordered and decreed that the defendant, Jesse C. Fain, be, and he is hereby, enjoined from exercising or attempting to exercise any right, ownership, or control over the same, and from interfering with the plaintiff in her exclusive right, ownership, and control thereof."

Mr. Fain, through this writ of error, has appealed from the judgment so rendered below except as to that part making disposition of the community property, very ably presenting here, among others, these main contentions:

(1) The judgment was erroneous in all those provisions described and quoted from under paragraph 2 above, because: (a) A Texas court has no jurisdiction or authority to cancel an instrument conveying lands in Mexico or to render a decree affecting the title to such lands, or to decree that an instrument conveying lands in Mexico has no legal effect as a conveyance, or to adjudicate between conflicting claimants the legal effect of an instrument affecting the title to such lands; that a decree impounding in the registry of the court an instrument affecting lands and enjoining a defendant from exercising control, ownership, or authority over the lands by virtue of the instrument, in effect cancels the instrument so far as the defendant is concerned; that, where the ground on which an instrument is sought to be canceled is that its execution was induced by fraud or duress, and where the court finds that the plaintiff has not shown any fraud or duress in the execution of the instrument, the relief sought cannot be granted, and, where no ground is shown for practically destroying the legal effect of an instrument, it should not be destroyed; that, where the pleadings allege fraud or duress in general terms, without setting up the facts constituting the fraud or duress, they are insufficient to raise any such issue; and that in this case no fraud or duress was shown." (b) The "Standard Royalties of Mexico, Limited," etc., created under the declaration of trust of April 26, 1921, was not a party to this suit, directly or through its trustees as such, and, since the evidence showed there were shareholders thereof who were not before the court, neither their interests nor its assets could be practically disposed of without their having had their day in court, as the judgment in effect did, the instruments vesting such interests not having been shown to be invalid or ineffective under either the pleadings or proof. (c) There was no basis in the pleadings or proof for the vesting of separate ownership in Mrs. Fain of all the Standard Royalties stock, since it was not so alleged, and the evidence conclusively showed the contrary.

(2) The court should not have so decreed the Webster, Tex., homestead property to Mrs. Fain, because, not only was the jury's finding under special issue A, that the husband and wife intended it to be the latter's separate property when receiving the deed thereto against the evidence, but it was also shown to the contrary that the consideration, boh contemporaneously with and after the execution of the deed, was paid out of their community funds; there being further no pleadings authorizing a trial of the title to the property between the two.

(3) The verdict of the jury in response to special issues IV and V was contrary to the evidence, as well as to the overwhelming preponderance of the testimony, in that it was undisputably shown that the Webster property was improved both by having been planted in figs and by repairs made on the houses.

(4) It was error to hold the income resulting during the marriage, as well as that to so come in the future, from the contract of November 16, 1921, to be the separate property of Mrs. Fain, because that accruing during the marriage was conclusively presumed to belong to the community, there being nothing shown to the contrary, while that to accrue in futuro was not properly involved in the suit.

(5) The court's instructions in connection with special issue No. 1 were neither authorized by the pleadings nor supported by the proof.

(6) The verdict of the jury under, and the award of the exclusive custody of the child following, special issue VI, was not justified by the evidence.

(7) The jury's verdict upon its face, especially in the answers to special issues IV and V, showed passion and prejudice toward Mr. Fain, in that no attention was paid to the evidence upon these inquiries.

(8) The court erred in taxing the entire costs of patitioning the community property against Mr. Fain, instead of dividing the same

between the two, charging them against the property.

(9) The certificate of Recardo Garcias, with accompanying purported copy of Gabriel Gorrochotegui's will, and the alleged certified copy of a purported deed from Hendricks and wife to Mrs. Fain, were not admissible in evidence over the objections interposed that they were not shown to be properly authenticated.

(10) The court erred in excluding, on objection that it was hearsay, self-serving, immaterial, incompetent, etc., the proffered testimony of Mr. Fain in connection with an alleged letter to him from Harold Weaver of January 14, 1926.

(11) The court erred in adjudging that no payments made on the Webster homestead indebtedness out of the proceeds of the development contract of November 16, 1921, should be deemed to have been made by Mr. Fain, for all the reasons hereinbefore indicated in other objections to the judgment.

Weaver did not appeal.

[1] We are constrained to overrule all these presentments; the cause was one coming within the purview of R. S. art. 4638, and, conformably thereto, as well as to well-settled judicial construction thereof (Hedtke v. Hedtke, 112 Tex. 404, 248 S. W. 21; Hughes v. Hughes [Tex. Civ. App.] 259 S. W. 180; Fitts v. Fitts, 14 Tex. 444; Wright v. Wright, 7 Tex. 526; Ex parte Latham, 47 Tex. Cr. R. 208, 82 S. W. 1046; Moor v. Moor, 24 Tex. Civ. App. 150, 57 S. W. 992, also 22 Tex. 237; Powell v. Powell [Tex. Civ. App.] 170 S. W. 111), the learned trial court not only construed the pleadings more liberally than in other kinds of civil cases (Caywood v. Caywood [Tex. Civ. App.] 290 S. W. 891), but, as the inconclusive issues submitted to the jury and the supplementary findings of the court make manifest, proceeded, not upon the verdict alone, but also upon independent and additional determinations of its own, to both divorce the husband and wife and divide their estate, separate and community, between them, at the same time adjudging the custody of their only child; indeed, in thus deciding the entire cause, the court, with the acquiescence of both parties—except that the defendant requested inquiries as to whether both intended the Webster property notes to be paid out of their community estate, and whether he himself intended to make a gift of the necessary part of the Mexican property's income to pay them, along with two definitions of community property—only used the jury's aid in these findings:

First, the plaintiff was, and the defendant was not, entitled to a divorce.

Second, she was not guilty of adultery, as charged in the cross-action.

Third, the Webster property had not been improved one cent, either by having been planted in figs or by the repairs made on the buildings.

Fourth, the custody of the child should be awarded to one parent exclusively, and the mother was that one.

Fifth, when the deed to the Webster property was executed and delivered, the plaintiff and defendant intended that it should be the separate property of the plaintiff.

It is true that, among these independent findings stated in the decree, was this: "The court finds that plaintiff has not shown duress or fraud in the execution of said instruments."

[2, 3] In so far, therefore, as her pleadings declared the four impounded instruments she signed void on the particular ground that they had originally been procured from her by fraud, we agree with plaintiff in error that her contention was not sustained, since she concedes the quoted findings to have been supported by the evidence, but, as recited at the beginning, that was not the only basis on which she declared the instruments not to be binding upon her; her supplementary petition declaring them to be void and ineffectual because "no consideration was paid therefor to the plaintiff, and that no improvements, developments, or operations were ever undertaken by the defendants affecting any of the plaintiff's lands or interests, but the same have been by the defendants long since abandoned," and there was sufficient evidence to support a finding to that effect. If necessary to support the judgment, it will be deemed to have been made by the court; indeed, looking to the extended testimony upon this feature as a whole, and considering all the circumstances, it would plainly be a justifiable and legitimate conclusion of fact, not only that these documents were executed and delivered between the parties to them without the contemplation of any quid pro quo being due Mrs. Fain for them, rather upon the mutual understanding that it was being done for her benefit merely as a method of enabling her husband and his aide, Mr. Weaver, to better care for and develop property that was all undisputably shown to have come to her from her father's estate in her separate right, but also that nothing else in fact went to her for so executing them.

We therefore conclude that the court was not beyond the bounds of either the pleading or proof in refusing, on dissolving the marriage relation, to enforce such instruments as valid contractual obligations upon Mrs. Fain's part in favor of her former husband.

So much concerning the validity, inter sese, of the documents brought into review by the litigants here; as concerns the contention that the court exceeded its jurisdiction and power in the reaches of the order made touching them, that too seems to us not well taken. This was done upon final trial; the defendants having yielded to a prior interlocutory order and deposited the original instruments in the registry of the court. All the parties executing these papers, which included the

four signed by Mrs. Fain and the one of October 27, 1921, by Mr. Fain alone, were also then before the court—that is, the plaintiff and the two defendants—having by pleadings and appearance subjected themselves personally to its jurisdiction. The instruments, too, had all been severally acknowledged by them before a notary public in Harris county, Tex., as well as filed there for record, but had not been so filed elsewhere.

[4] In these circumstances, although the property, or most of it, with which the papers dealt, was located in the republic of Mexico, the court's decree may be upheld, we think, upon the view that it was operative in personam only—that is, simply required the personal obedience of the parties that affected the foreign title incidentally—and was in no proper sense a judgment in rem that must act directly upon that property. The recognized rule upon the subject, with its correct limitation, is thus quoted, in part, with approval by our Supreme Court in Railway v. Gay, 86 Tex. 571, 26 S. W. at page 605, 25 L. R. A. 52:

" 'Where the subject-matter is situated within another state or country but the parties are within the jurisdiction of the court, any suit may be maintained, and remedy granted, which directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts towards it, and it is thus ultimately, but indirectly, affected by the relief granted. * * * On the other hand, when the suit is strictly local, the subject-matter is specific property, and the relief, when granted, is such that it must act directly upon the subject-matter, and not upon the persons of the defendant, the jurisdiction must be exercised in the state where the subject-matter is situated.' Pom. Eq. Jur. 1318; Whart. Confl. Laws, 288–293."

See Paschal v. Acklin, 27 Tex. 174, and Schmaltz v. York, 204 Pa. 1, 53 A. 522, 59 L. R. A. 907, 93 Am. St. Rep. 782.

It is not thought that the authorities relied upon by plaintiff in error, such, for example, as Moseby v. Barrow, 52 Tex. 396, and Morris v. Hand, 70 Tex. 484, 8 S. W. 210, both of which are reviewed in the Gay Case, supra, at page 609, furnish any warrant for a different interpretation of this judgment.

These conclusions upon the leading contentions for a reversal in effect dispose of a number of the subsidiary ones.

[5, 6] The claim that the decree was shown to be prejudicial to the interest of other shareholders in the "Standard Royalties of Mexico, Limited," etc., not parties to the suit, and deprived them of their property without their having had their day in court, was not sustained; a complete answer to it, in the first place, is that, if there were other such owners of beneficial interests in any property held under this high-sounding name, not being parties to the proceeding, their interests were unaffected by the decree therein, and

might still be independently asserted, since all it purported to do, in substance, was to enjoin the two defendants who were in court from conveying or exercising rights of ownership over what was found to be the separate property of the plaintiff by reason of this declaration of trust, along with the other impounded documents. In the next place, there was no plea of nonjoinder of parties nor other objection to the failure to bring alleged additional stockholders until after trial on the merits; that matter having been called to the lower court's attention for the first time in the amended motion for a new trial; it therefore came too late to be urged upon the appeal. R. S. art. 1992.

Concerning the sufficiency of both pleadings and proof to support the adjudication of the divorce, custody of the child, and individual property interests to the wife, we have had no difficulty; there is, we conclude, proper basis for them all.

[7] As before indicated, the wife's pleadings challenged the right of the defendant husband to retain a beneficial interest in any of the properties held between them on the general ground that they were all hers individually, having come to her in her separate right from the estate of her deceased father, that no consideration for any alienation thereof to him in whole or part had ever come from him to her, and that the various changes wrought therein by the many transactions between the two, evidenced by the impounded instruments and other dealings, had not changed that original status with reference thereto between them. The evidence substantiated these averments; hence the verdict and judgment resting thereon may not here be disturbed. It is deemed unnecessary, especially in view of its great volume, to here undertake a review of it.

The wife has not seen fit to appeal from that portion of the decree awarding to plaintiff in error a one-half interest in what was found to be community property, and, since he too eliminated it, that feature is not here involved.

[8, 9] Not having brought up for review the part of the judgment dealing with community property, we do not think Mr. Fain in position to complain in this court of the taxing of costs relating thereto against him; but, if he were, the matter was within the sound discretion of the trial court under all the facts, and no abuse thereof is shown.

The rulings upon the evidentiary matters assailed were not, we think, prejudicial. The material facts reflected in the copy of the will objected to were not only otherwise shown, but Mr. Fain himself also offered it in evidence.

[10] While the proper predicate seems to us to have been laid for the admission of the challenged copy of the Hendricks deed as secondary evidence, still the error, if any, in receiving it, was harmless, because the evidence

otherwise conclusively established the main fact it purported to reflect—that the cash payment on the Webster property had been made out of Mrs. Fain's separate estate.

[11] The argument for error in the exclusion of Mr. Fain's testimony in connection with an alleged letter from Harold Weaver to him is that he had had grounds for charging his wife with improper conduct in his pleadings, and that he had used every effort to get Weaver to come to court and testify. The court's qualification to the bill of exception, taken in connection with the applicable portions of the statement of facts therein referred to, shows that he was in fact at other times during the trial permitted to introduce the material substance of this testimony, other than the copy of the purported letter from Weaver. As to it, we think the objection that it was not properly authenticated nor identified was good.

Moreover, and in any event, the evidence on the whole seems to us to have not only so overwhelmingly supported the jury's verdict upon that issue as to have made any other very improbable, but further to have conclusively established that the plaintiff in error either did not himself believe the charges to be true, or, if he did, that he had long before the trial of this cause condoned any improper conduct the proffered testimony might have asserted. He was therefore not injured by its exclusion.

These conclusions determine the merits of the appeal, and require an affirmance; that order has accordingly been entered.

Affirmed.