**Ex parte Gordon L. YATES.**

**No. A–10406.**

Supreme Court of Texas.

Feb. 10, 1965.

Clyde, Hines & Craig, Fort Worth, for relator.

Ernest May, Fort Worth, for respondent.

SMITH, Justice.

Relator, Gordon L. Yates, applies here for a writ of habeas corpus from an order of commitment entered by the judge of the 153rd District Court of Tarrant County, Texas. The commitment was ordered pursuant to a judgment entered by the Court on September 18, 1964, adjudging Yates guilty of civil contempt for failure to comply with the Court's judgment entered in a divorce suit on December 3, 1963. The Relator seeks release from the custody of the sheriff of Tarrant County, Texas, on the ground that the action of the judge in finding him guilty of civil contempt for failure to obey that portion of the divorce judgment dealing with the community property owned by Gordon L. Yates and his wife, Mary Ruth Yates, at the time of the divorce, amounts to an imprisonment for debt in violation of Article I, Section 18, of the Constitution of the State of Texas, Vernon's Ann.St.

The order of commitment recites that the defendant, Gordon L. Yates, is "* * * adjudged to be guilty of civil contempt, and is remanded to the custody of the sheriff of Tarrant County, Texas, for three days, and thereafter until he purges himself by payment of all arrears of the judgment against him * * *."

We have concluded that the judgment of contempt is void insofar as it directs that Yates shall remain in custody "until he purges himself by payment of all arrears of the judgment."

Relator's wife filed a suit for divorce and division of the community property. During the pendency of the cause, relator was enjoined from disposing of any of the community property. Trial was had before a jury; and, after the jury had retired, counsel for the wife moved for a non-suit. The Court permitted the non-suit and discharged the jury. Thereafter, the court determined that it was lacking authority to grant the nonsuit and recalled the foreman of the jury to have him sign the verdict. This "verdict" was in favor of relator, and his counsel entered a motion for judgment, while the wife's counsel moved the court to declare a mistrial. The court declared a mistrial, after which the wife amended her petition and the cause came on again for trial.

On December 3, 1963, the Court entered its judgment dissolving the marriage, and ordered a division of the community property.[1]

---

1. In part, the judgment provides as follows: "Upon the evidence the Court finds that the estate is wholly personal and all community property, of value $191,101.51. The Court finds that the plaintiff should be charged $6,500.00 for alimony received pending the suit, and that she is now entitled to property of value $89,050.75. To effect the division of the estate the Court deems just and right, it is now ORDERED, ADJUDGED and DECREED:

(1) On or before December 6, 1963, the defendant shall pay the plaintiff $5,000.00.
(2) The plaintiff shall have the interest of the estate in two promissory notes of Glen Yates, Inc. * * *
(3) The plaintiff shall have $67,920.75 of the debt of Gordon Yates Lumber Company to Gordon L. Yates. More than said sum is evident by a promissory note of said corporation to the defendant's order. He shall deliver said

In April, 1964, after the divorce judgment became final, Mrs. Yates filed a motion to have the relator adjudged in contempt of the Court for disobedience of the partition decree. In determining whether or not Yates is guilty of contempt, this Court is particularly concerned with that provision of the divorce judgment which reads:

"(3) The plaintiff shall have $67,-920.75 of the debt of Gordon Yates Lumber Company to Gordon L. Yates. More than said sum is evident by a promissory note of said corporation to the defendant's order. He shall deliver said note to the plaintiff as security for her payment, but may redeem the note by instalment payments of $500.00 per month principal and one twelfth of four per cent. interest per annum on the unpaid balance of $67,920.75. * * *"

It is apparent that Mrs. Yates and the Court proceeded upon the theory that the failure of relator to exercise the right to redeem the Gordon Yates Lumber Company note in the manner provided in the judgment constituted a willful and contumacious act punishable by contempt. It is also apparent from the record in this proceeding that relator, before the entry of the divorce judgment, and without the knowledge of the Court, pledged the note to a bank as security.

On September 3, 1964, after the Court had granted relator several postponements, the Court proceeded with the hearing and found relator guilty of civil contempt. However, the Court's order of commitment was withheld in order to give relator a reasonable opportunity to purge himself of contempt by paying to Mrs. Yates all unpaid monthly installments as provided in the divorce judgment.

On September 18, 1964, Yates was ordered committed for his failure to purge himself of contempt.

note to the plaintiff as security for her payment, but may redeem the note by instalment payments of $500.00 per

The order of commitment contains the following fact findings:

1. Relator willfully concealed the pledging of the note until after the partition decree.

2. Relator never intended to perform the partition decree.

3. Relator has always intended, and now intends, to defraud the wife of her rights adjudged by the decree.

4. Relator *has been continuously able to perform the decree,* and his refusal to do so is willful and contumacious.

The case does not come before us as one in which relator is being committed for pledging the note in violation of the court's injunction against disposition of community property during the pendency of the divorce action.

Assuming without deciding that the recitation in the divorce judgment that Yates "may redeem the note by instalment payments of $500.00 per month principal and one twelfth of four per cent. interest * * *" is decretal in nature and forms a part of the divorce judgment, we, nevertheless, hold that the court could only assess the appropriate punishment for willfully concealing the pledging of the note. Therefore, that portion of the order of commitment which remands Yates to the custody of the sheriff of Tarrant County, Texas, for three days is left undisturbed.

We cannot agree with the respondent's argument that the case of Ex parte Preston, 162 Tex. 379, 347 S.W.2d 938 (1961), rules the present case. In the Preston case, the trial court found that Preston had in his possession the sum of $21,000 of community property, and that $10,000 thereof had been awarded to Preston's wife. The trial court in the Preston case did not order that any sum of money be paid to Mrs. Preston, but

month principal and one twelfth of four per cent. interest per annum on the unpaid balance of $67,920.75. * * *"

ordered Preston to pay the money into the hands of the court. The money was in the possession of and in complete control of Preston. The only purpose in ordering Preston originally to pay over the $21,000 to the clerk of the court was so that the court would have possession and control over the community property in order to carry out its duty to make a division between the parties. In holding the acts of Preston to be contumacious, this Court cited Ex parte Britton, 127 Tex. 85, 92 S.W.2d 224, 226 (1936), wherein it was held:

"The rule is established that a court having jurisdiction of the parties and the res of the litigation has undoubtedly authority to order the surrender of property held by the defendant or any other person who is a party to the suit."

Another case, cited with approval by this Court in the Preston case, is that of Ex parte Latham, 47 Tex.Cr.R. 208, 82 S.W. 1046 (1904). The appellate court in the Latham case declined to follow the relator's contention that the trial court was not authorized to imprison him for debt. The appellate court in Latham held that since it was competent for the trial court to make partition of the community property then the trial court was authorized to require the relator to turn over the community property conceded then to be in his hands for the purpose of distribution, and further the court was authorized to enforce its decree by a contempt proceeding.

This Court held that the order entered in the Preston case was not void, and that the facts demonstrated that the enforcement of the order would not constitute imprisonment for debt in violation of Article I, Section 18, of the Texas Constitution. The basis for this holding was the fact that the order merely directed Preston to "pay over money in his possession that rightfully belongs not to him but to his wife." The judgment of divorce did not purport to decree that Preston was indebted to his wife. The judgment of divorce simply ordered a division of the money and directed Preston to pay over to the clerk of the court that portion which had been awarded to the wife.

We decline to apply the rule announced in the Preston case to the factual situation presented in this case. The order holding Yates in contempt conforms to the facts in evidence. The order itself reveals that the money which Yates was being ordered to pay to Mrs. Yates was not property found to be owned by Mrs. Yates and in the possession of Yates, but was money to be earned by Yates in the future. The order does not, as in Preston, make a division of the property and direct a surrender to the clerk of the court property held by Yates. The record clearly shows that Yates is being imprisoned for debt in violation of the Texas Constitution. Therefore, that portion of the order which remands Yates to the custody of the sheriff of Tarrant County, Texas, until he "purges himself by payment of all arrears of the judgment against him * * *" is void. However, that portion of the order finding Yates in contempt for willfully concealing the pledging of the note until after the partition decree is held to be valid.

The relator Yates is ordered remanded to the custody of the sheriff of Tarrant County, Texas, and the relator Yates shall remain in such custody until he has completed serving the three day jail sentence provided in the judgment of the trial court. Upon completion of the sentence, the relator shall be discharged from custody and his sureties released from liability on his bond.

NORVELL and STEAKLEY, JJ., dissenting.

NORVELL, Justice (dissenting).

I respectfully dissent. The relator should be remanded to the custody of the sheriff of Tarrant County to be held until he purges himself of contempt. The order of commitment must be construed in connection with the provisions of the divorce de-

cree which effects a division of the community property between relator and his former wife. The divorce decree provides that, "The plaintiff (Mary Ruth Yates) shall have $67,920.75 of the debt of Gordon Yates Lumber Company to Gordon L. Yates. More than said sum is evidenced by a promissory note of said corporation to the defendant's order. He shall deliver said note to the plaintiff as security for her payment, * * *"

I interpolate here to say that undoubtedly the relator could purge himself of contempt here and now by delivering to Mrs. Yates the promissory note mentioned and placing her in the position she purportedly occupied under the court's decree at the time it was rendered. The opinion of the Court states that prior to the entry of the divorce decree, the relator had pledged the note to a bank. This circumstance is in actuality wholly immaterial to the real issue of this case. The gravamen of relator's offense is concealment which in effect amounted to a representation that the note was a part of the community estate and hence available for the purposes of effecting a just settlement of such estate between husband and wife. The question of whether relator is able to deliver the note to Mrs. Yates is material only upon the issue of the ability of relator to purge himself of contempt in failing to carry out the trial court's decree.[1]

The divorce decree was somewhat unusual in that it contained an option provision. After the wording above quoted the decree proceeds as follows: "but (he) may redeem the note by installment payments of $500.00 per month principal and one twelfth of four per cent interest per annum on the unpaid balance of $67,920.75."

In the order of commitment the Court found that the relator has made a fraudulent pledge of all the community estate; that he has wilfully concealed this circumstance from the Court and that relator "has always intended, and now intends, to defraud the plaintiff of her rights adjudged by the decree; that he has been continuously able to perform the decree, and that his default is wilful and contumacious."

Had the order of commitment simply provided that the relator be remanded to the custody of the sheriff until he complies with the provisions of the decree, there could be no doubt as to its validity. Ex parte Latham, 47 Tex.Cr.R. 208, 82 S.W. 1046 (1904). When the divorce decree and the order of commitment (the contempt order) are construed together, as they must be, the legal effect is the same. Certainly the contempt order cannot enlarge or add to the provisions of the decree. As long as one follows the provisions of the decree, he cannot be held liable for contempt. However, a trial judge may in his discretion allow something less than a full performance to operate as a purge of contempt. In all events, the person charged with contempt is in no position to complain that something less than full performance is required of him in order to obtain a release from custody.

In the present case, that portion of the order which permits relator to urge himself of contempt refers to the option payments rather than to the delivery of the note, although as above pointed out, the ability to purge cannot and is not restricted to the option payments. The record discloses the reason for such provision. It is shown that the relator had made a number of $500.00 monthly payments and had, through counsel, assured the Court that he would continue to make such payments. The handling of divorce settlements, child support payments and the like present difficulties which at times are aggravated by personal animos-

---

1. In connection with the pledge of this note, relator says that he was acting "on advice of counsel" and perhaps it should be said that such advice was not given by the attorney who represents the relator in the present proceeding. It is not shown here that the alleged pledge to the bank was valid or would render it impossible for relator to deliver the note to Mrs. Yates as required by the divorce decree even if a reacquisition of the note be necessary.

ities. Much patience and ingenuity is often required of the district judge in determining these problems and in preventing persons laboring under the stress of their emotions from taking actions which would probably result in financial loss to the parties directly involved as well as their dependents. It is all right to split the blanket down the middle if one doesn't care much about the kind of a blanket that remains, but when a going business concern is involved some other form of division than one in kind is often called for. The divorce decree in this case, while unusual in provision (as is usually the case in a complicated business property situation) represents an attempt to save and protect the property rights of both parties. Violations of its terms should not be taken lightly, and all reasonable intendments or constructions of the divorce decree and the ancillary order of commitment should be given effect so as to support and not destroy the efficacy of the judgment.

There is no debt involved here. The relator has violated the provisions of a property settlement decree. He has not delivered the note to his former wife as he was ordered to do. He has not made the required monthly payments essential to his redemption of the note under the optional provisions of the decree. The trial court has found that he is able to perform and until inability to so perform is demonstrated to this Court, the relator should be held in custody. Ex parte Preston, 162 Tex. 379, 347 S.W.2d 938 (1961); Harvey v. Harvey, Colo., 384 P.2d 265 (1963).

The optional nature of the monthly payment provision in the divorce decree in itself prevents the same from being a "debt". If such payments were not made, an action for a money judgment for debt could not be maintained thereon because of its optional nature, although other remedies may be available. In Ex parte Davis, 101 Tex. 607, 111 S.W. 394, 17 L.R.A.,N.S., 1140 (1908) this Court said:

"There are many instances in the proceedings of the courts where the performance of an act may be enforced by imprisonment and would not come within the prohibition of the Constitution, although it might involve the payment of money. * * * If it (the order involved in the case) were not complied with the plaintiff in the case could not maintain an action in any other court in this state to enforce the payment. 4 Ency.Pl. & Pr. 432, 433. It seems to us clear that the order entered by the court did not in any sense constitute a debt against the defendant, Davis."

In this case we have a direct violation of a court decree designed to protect the vested property rights of the wife in the community and yet it is held that a "debt" is involved, despite the fact that no debt is created by the divorce decree. It is somewhat interesting to note that one rationale of the holding that alimony (where permitted by statute) is not a debt is that "the (alimony) order is in effect a decree of distribution of property, requiring payment to the wife of her share of the estate," and the function of a contempt decree is not merely to punish for the failure to pay money but rather to force one to carry out the decree of a court when he is able to do so and his refusal to perform is wilful and contumacious. 30 A.L.R. 130, l. c. 133, Annotation, "Alimony or maintenance as debt within constitutional or statutory provisions for debt."

STEAKELY, J., joins in this dissenting opinion.