NO









NO. 12-09-00278-CV

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

                                                                             '     

IN RE: JERRY BYROM,

RELATOR                                                          '     ORIGINAL
PROCEEDING

 

                                                                             '     

 





OPINION
ON REHEARING

            Real party in interest Roy P. Anderson filed a motion for
rehearing, which is overruled.  We withdraw our opinion and judgment of January
29, 2010, and substitute the following opinion and corresponding judgment in
its place.  

In
this original habeas proceeding, Relator Jerry Byrom seeks relief from an order
signed on June 16, 2009 finding him in contempt for violation of an order
signed on December 8, 2008.  The respondent is the Honorable Craig A. Fletcher,
Judge of the County Court at Law, Cherokee County, Texas.  The real parties in
interest are Roy P. Anderson and David S. Bouschor II.  We grant habeas corpus
relief.

 

Procedural History

            Byrom’s
mother, Ruby Renee Byrom, died on February 5, 2005.  Byrom was named in Mrs.
Byrom’s will as the sole beneficiary and independent executor of her estate. 
The will was admitted to probate in the County Court at Law, Cherokee County
(the “probate court”), and letters testamentary were issued to Byrom.  The
contempt order challenged here was signed in the probate proceeding as a result
of a controversy between Byrom and Anderson, a creditor of Mrs. Byrom’s estate.

The Claim

            On
June 3, 2005, Anderson presented to Byrom and filed in the probate court an
unsecured claim against Mrs. Byrom’s estate in the sum of $31,992.75, which was
based on two orders signed by the Denton County Probate Court.  The orders
arose out of a guardianship proceeding in which Byrom was appointed temporary
guardian of Mrs. Byrom’s person and Anderson was appointed temporary guardian
of her estate.  The first order authorized payment of $5,117.50 in temporary
guardian’s fees to Anderson and payment of $8,521.50 in attorney’s fees to
Bouschor for representing Anderson in the guardianship.  The second order,
signed after Mrs. Byrom’s death, authorized payment of $2,748.75 in temporary
guardian’s fees to Anderson and $15,535.00 in attorney’s fees to Bouschor for
representing Anderson.  Both orders stated that the fees were to be paid from
the funds of Mrs. Byrom’s estate within thirty days of the date of the order. 
However, the fees had not been paid at the time Anderson presented and filed his
claim in the probate court.  On June 9, 2005, Byrom’s attorney informed
Anderson that Byrom had rejected his claim.

Byrom’s
Removal as Independent Executor

            Approximately
two years after Byrom’s rejection of the claim, Anderson filed a motion to
remove Byrom as independent executor or, alternatively, to require Byrom to
post a bond, and to compel an accounting.  Anderson alleged that, in trial
court cause number 7773, he and Duane Coker, Mrs. Byrom’s attorney/guardian ad
litem, sued Byrom in his capacity as independent executor “for Authentication
of Claims.”[1] 
Anderson further alleged that a final order against Byrom was signed in that
cause on April 3, 2007.  As grounds for Byrom’s removal, Anderson alleged, in
part, that Byrom had (1) failed to pay claims in the due course of
administration, (2) misapplied property committed to his care, (3) failed to
comply with a final order of the court, signed on April 23, 2007,[2]
(4) liquidated real property assets of the estate and made disbursements to
himself in his individual capacity without payment to creditors of the estate,
and (5) failed to file an inventory, appraisement, and list of claims within
ninety days after qualification as required by Texas Probate Code sections 250
and 251.

            The
trial court held an evidentiary hearing on Anderson’s motion.  By order signed
on September 10, 2008, the probate court removed Byrom as independent executor,
but did not discharge him.  The order awarded Anderson $14,034.10 for
attorney’s fees and expenses incurred in the removal proceeding, and ordered
that Byrom pay this amount to Anderson within thirty days of the order. 
Additionally, the order included a finding that Mrs. Byrom’s estate owned an
interest in certain Denton County real property, which Byrom had converted to
cash in the amount of $622,786.22.  The order also directed Byrom to deposit
estate property in that amount into the registry of the court within thirty
days of the order.  On Byrom’s motion, the court signed a reformed order on
December 8, 2008, reducing the required deposit to $85,000.00. 

Contempt
Proceeding

            Byrom
did not comply with the December 8, 2008 order, and on March 20, 2009, Anderson
filed a motion to enforce the order by contempt.  He requested that Byrom be
confined in jail for a period not to exceed six months for each violation until
he deposited $85,000.00 into the court’s registry and paid Anderson’s fees and
expenses incurred in the contempt proceeding.  Byrom filed a written response
stating that he was no longer the executor of Mrs. Byrom’s estate and did not
have access to any funds of the estate.

            The
trial court conducted an evidentiary hearing on Anderson’s motion.  Byrom
testified that he had not complied with the court’s order because he did not
have $85,000.00, but acknowledged that he had received $622,786.22 as property
belonging to the estate.  His testimony was conflicting concerning whether he
received the money before or after the December 8, 2008 order was signed. 
Anderson’s attorney then proved up $7,058.17 in attorney’s fees and expenses
incurred in the contempt proceeding.

            At
the conclusion of the hearing, the trial court held Byrom in civil contempt
after finding that he had failed to deposit $85,000.00 in estate funds into the
court’s registry as required by the December 8, 2008 order.  Byrom was ordered
to report to the court on July 2 at 9:00 a.m. at which time he would be
remanded to the Cherokee County jail if he had not purged himself of the
contempt by making the required deposit and paying Anderson’s attorney’s fees
and expenses in the contempt proceeding. [3] 
Byrom did not purge himself of the contempt and was confined in the Cherokee
County jail.

Habeas
Proceedings

            Byrom
filed an application for writ of habeas corpus seeking bail, and the trial
court signed an order setting his bond at $80,000.00.  His attorney filed a bond,
and Byrom was released from jail.  He then amended his habeas application
requesting that the court grant an evidentiary hearing and, after hearing
evidence, order him released from confinement.  The court conducted the
requested hearing on September 2, 2009.  Byrom testified that at the time the
Denton County property was sold, he did not have notice of any claims he would
owe out of the proceeds or any of the fees that he had been ordered to pay.  He
again insisted that he had none of the funds remaining.  He also admitted that
the day before he was held in contempt, he signed gift deeds conveying four
tracts of land to his daughter.  He testified, however, that he did not
purchase the property with money from his mother’s estate.

            At
the conclusion of the hearing, the trial court denied habeas relief, ordered Byrom
taken into custody, and set his bond at $95,000.00 cash.  Byrom then filed this
original habeas proceeding, and also filed a motion for temporary relief, which
was denied.

Availability of Habeas Corpus

            Habeas
corpus is available to review a contempt order entered by a lower court
confining a contemnor.  Ex parte Gordon, 584 S.W.2d 686, 687-88
(Tex. 1979) (orig. proceeding).  An original habeas proceeding is a collateral
attack on a contempt judgment.  Ex parte Rohleder, 424 S.W.2d
891, 892 (Tex. 1967) (orig. proceeding); In re Ragland, 973
S.W.2d 769, 771 (Tex. App.–Tyler 1998, orig. proceeding).  Its purpose is not
to determine the ultimate guilt or innocence of the relator, but only to
ascertain whether the relator has been unlawfully confined.  Ex parte
Gordon, 584 S.W.2d at 688.

            A
court will issue a writ of habeas corpus if the order underlying the contempt
is void or if the contempt order itself is void.  See Ex parte Shaffer,
649 S.W.2d 300, 301‑02 (Tex. 1981) (orig. proceeding); Ex parte
Gordon, 584 S.W.2d at 688.  The relator bears the burden of showing
that the contempt order is void and not merely voidable.  In re Munks,
263 S.W.3d 270, 272-73 (Tex. App.–Houston [1st Dist.] 2007, orig. proceeding). 
Until the relator has discharged his burden, the contempt order is presumed
valid.  In re Parr, 199 S.W.3d 457, 460 (Tex. App.–Houston [1st
Dist.] 2006, orig. proceeding).  

            A
contempt order is void if it deprives the relator of liberty without due
process of law or if it was beyond the power of the court to issue.  See In
re Coppock, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding).  An
order of confinement for failure to pay a debt violates the Texas Constitution
and therefore is beyond the power of the court to issue.  See In re Henry,
154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding).  Consequently, such an
order is void.  Id.  

 

Validity of the Contempt Order

            In
his first issue, Byrom asserts that Anderson and Bouschor have “creatively used
the procedures for civil contempt to collect their legal and accounting fees,
rather than through well established debt collection procedures.”  He also
makes reference to the attorney’s fees awarded to Anderson by the probate
court, which are ordered payable out of estate property.  The authority Byrom
cites pertains to the prohibition against imprisonment for debt found in
article I, section 18 of the Texas Constitution and the prohibition against
collection of attorney’s fees by contempt.  He contends that, in light of the
cited authority, the contempt order is void.

            Anderson
responds that Byrom was held in contempt for failing to deposit $85,000.00 into
the registry of the court as ordered on December 8, 2008, and that there is
nothing in the record to indicate that the $85,000.00 was for the collection of
attorney’s fees.  

Imprisonment
for Debt

            As a
general rule, a person who willfully disobeys a valid court order is guilty of
contempt and subject to imprisonment for a prescribed period until he complies
with the order.  Ex parte Hall, 854 S.W.2d 656, 658 (Tex. 1993)
(orig. proceeding).  But the Texas Constitution provides that “[n]o person
shall ever be imprisoned for debt.”  See Tex. Const. art. I, § 18.  This provision establishes that
“[i]t is not the policy of the law [in Texas] to enforce the collection of mere
civil debts by contempt proceedings.”  Ex parte Britton, 127 Tex.
85, 90, 92 S.W.2d 224, 227 (1936) (orig. proceeding).  An order requiring
payment of a debt may be enforced through legal processes like execution or
attachment, but not by the imprisonment of the adjudicated debtor.  Ex
parte Hall, 854 S.W.2d at 658; see also In re Nunu,
960 S.W.2d 649, 650 (Tex. 1997) (orig. proceeding) (reasoning that because a
judgment awarding damages cannot be enforced by contempt, court cannot require
payment of expenses incurred as means of purging contempt). 

            Not
every obligation to pay money is a debt within the meaning of article I,
section 18.  See Ex parte Davis, 101 Tex. 607, 612, 111 S.W. 394,
396 (1908) (orig. proceeding) (“There are many instances in the proceedings of
the courts where the performance of an act may be enforced by imprisonment and
would not come within the prohibition of the Constitution, although it might
involve the payment of money.”).  For example, an obligation that is a legal
duty arising out of the status of the parties is not a debt and therefore may be
enforced by contempt.  See In re Henry, 154 S.W.3d at 596
(holding that past due child support is not a debt); Ex parte Gorena,
595 S.W.2d 841, 846-47 (Tex. 1979) (orig. proceeding) (holding that former
husband was constructive trustee for portion of monthly retirement pay awarded
to former wife in divorce decree; therefore obligation to deliver money to
former wife was not “debt”).  Similarly, criminal fines are not debts, and
confinement for failure to pay criminal fines is not prohibited.  In re
Henry, 154 S.W.3d at 596 n.1.

            Generally,
however, an obligation to pay money arising out of a contract is a debt within
the meaning of article I, section 18.  Tex.
Const. art. I, § 18 interp. commentary.  Moreover, “[a]ll causes of
action become debts when they are placed in the form of judgments. . . .”  Id.;
see also Ex parte Hall, 854 S.W.2d at 658.  And with few
exceptions, none of which are applicable here, attorney’s fees are debts and
cannot be collected by contempt.  See Wallace v. Briggs,
162 Tex. 485, 488-90, 348 S.W.2d 523, 525-26 (1961) (orig. proceeding); Ex
parte Dolenz, 893 S.W.2d 677, 680-81 (Tex. App.–Dallas 1995, orig.
proceeding).

The
Contempt Order

            Anderson
contends that Byrom was held in contempt and confined for failure to comply
with the respondent’s December 8, 2008 order by depositing $85,000.00 in the
court’s registry.  He points out that the order Byrom violated was a “court
order made mandatory by [Texas Probate Code section] 149C(b). . . .”  Because
the order Byrom disobeyed was mandatory by statute, Anderson contends that
contempt and confinement are permissible.  

An
order removing an independent executor must direct the disposition of the
assets remaining in the name or under the control of the removed executor.  Tex. Prob. Code Ann. § 149C(b) (Vernon
Supp. 2009).  The order requiring the $85,000 deposit was signed in compliance
with this section.  However, Anderson has a judgment against Byrom as
independent executor of Mrs. Byrom’s estate.  From our review of the record, it
is clear that Anderson sought Byrom’s removal as independent executor and filed
his motion to enforce the December 8, 2008 order by contempt to assure that
property of the estate would be available to satisfy his judgment against
Byrom.  Because Byrom is the sole beneficiary under the will, there are no other
beneficiaries who would benefit from the $85,000.00 deposit.  Therefore, it is
also clear that the respondent required the deposit for Anderson’s benefit.[4] 


An
order requiring a deposit of funds into the court’s registry is not enforceable
by contempt if any portion of the funds is for the payment of a debt.  See In
re Wiese, 1 S.W.3d 246, 251 (Tex. App.–Corpus Christi 1999, orig.
proceeding) (contempt order void because portion of funds to be deposited in
registry was attorney’s fees that were part of turnover order); Ex parte
Roan, 887 S.W.2d 462, 465 (Tex. App.–Dallas 1994, orig. proceeding)
(order void where trial court conditioned coercive contempt upon payment of
funds into registry and funds were ordered deposited for judgment creditors’
benefit).  Here, Anderson’s judgment is against Byrom in his
representative capacity and is based on the fee orders of the Denton County
Probate Court.  He also has been awarded attorney’s fees and expenses incurred
in various proceedings in the probate court that are payable from estate
property.  As we have previously stated, a judgment is a debt and cannot be
collected by contempt.  Ex parte Hall, 854 S.W.2d at 658. 
Additionally, the attorney’s fees and expenses awarded to Anderson by the
probate court are debts.    See Wallace v. Briggs, 162 Tex. at
488‑90, 348 S.W.2d at 525-26; Ex parte Dolenz, 893 S.W.2d
at 680-­81.  Therefore, the only sums payable to Anderson out of estate
property are for debts.  Consequently, Byrom has been held in contempt for
failure to deposit funds that will be used to pay debts.  See Ex
parte Roan, 887 S.W.2d at 465.  Thus, the contempt order
violates the constitutional prohibition against imprisonment for debt and is
void.  See In re Henry, 154 S.W.3d at 595.  Because the contempt
order is void, the order illegally restrains Byrom.  See In re Wiese,
1 S.W.3d at 251; Ex parte Roan, 887 S.W.2d at 465.

The Buller
Cases

Anderson
disagrees and calls our attention to the Buller cases.  See Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991) (“Buller I”);
Ex parte Buller, 834 S.W.2d 622, 623-24 (Tex. App.–Beaumont 1992,
orig. proceeding) (“Buller II”).   He urges that the facts in Buller
II and those presented in this case are indistinguishable and concludes
that we should deny Byrom’s habeas petition.

            Buller
I is an appeal from a turnover order directing Patricia Buller,
independent executrix of her husband’s estate, to deliver a specific amount of
estate cash to the sheriff for levy in partial satisfaction of a judgment.  Buller
I, 806 S.W.2d at 224.  In reviewing the order, the supreme court stated
that once the cash was traced to Buller in her representative capacity, a
presumption arose that those assets were in her possession.  Id.
at 226.  The burden then shifted to Buller to account for the assets.  Id. 
The court noted that Buller presented only scant documentation to support her
testimony that she no longer had possession of the cash.  Id. 
Ultimately, the court determined that “[c]learly the trial court was within its
discretionary authority in disbelieving Mrs. Buller’s unsubstantiated claim
that [the] cash was spent. . . .”  Id.  Specifically, the court
opined that “simply asserting ‘I spent it’ is unacceptable.”  Id.
at 227.  Consequently, the court affirmed the portions of the turnover order
that relate to our analysis in this case.  See id.   

            Despite
the supreme court’s ruling, Buller refused to comply with the turnover order. 
As a result, the trial court held her in contempt and confined her.  See
Buller II, 834 S.W.2d at 624.  She sought habeas relief arguing,
in part, that her confinement violated the constitutional prohibition of
imprisonment for debt.  Id. at 626; see also Tex. Const. art. I, § 18.  The Beaumont
court of appeals held to the contrary, relying on two cases it described as
“compellingly persuasive.”  Id. at 626-27.

            In
the first case, the supreme court determined that a husband could be held in
contempt and confined for refusing to obey an order to pay into the court’s
registry his wife’s share of certain community property funds.  Ex parte
Preston, 162 Tex. 379, 381, 347 S.W.2d 938, 939 (1961).  Preston
argued, in part, that the sum to be paid constituted a debt to his wife and
therefore he could not constitutionally be held in contempt and confined for
his failure to deposit the funds.  Id., 162 Tex. at 382, 347
S.W.2d at 940; see also Tex.
Const. art. I, § 18.  The court observed that the money Preston was
ordered to deposit rightfully belonged to his wife under the terms of the
divorce decree.  Id., 162 Tex. at 384, 347 S.W.2d at 941.  Thus,
he was not a debtor of his wife, but a constructive trustee holding a portion
of the assets awarded to her in the divorce decree.  Id.  In the
court’s view, there was “no question . . . about the right of the [trial] court
to hold a trustee in contempt of court for willfully refusing to obey an order
to pay over funds held in his hands to the one rightfully entitled thereto.”  Id.

            In
the second case, the supreme court held that a husband could be held in
contempt and confined for refusing to surrender property to his former wife as
ordered in the divorce decree.  Ex parte Gorena, 595 S.W.2d at
846-47.  Gorena was committed to jail for contempt for failing to pay his former
wife monthly payments of a portion of his military retirement benefits.  Id.
at 843.  In denying habeas relief, the supreme court concluded that Gorena held
the unpaid funds as a trustee for his wife.  See id. at
846-47.  Therefore, he was not being imprisoned for debt.  See id.


            In
short, the supreme court in Preston and Gorena held
that the contemnor’s refusal to deliver the property of another to its rightful
owner as ordered was punishable by contempt and confinement.  In applying these
two cases, the court stated in Buller II that 

 

[a] trustee or other fiduciary such as a legal
representative or independent executrix may constitutionally be fined and
jailed for contemptuously refusing to obey an order to turn over funds held in
her hands and subject to her right of possession to a proper authority or
entity that is lawfully and rightfully entitled to those funds for levy.

 

Buller II,
834 S.W.2d at 626.  It then concluded that Buller, as independent executrix of
her husband’s estate, had a fiduciary relationship to the estate’s creditors.  Id. 
Because of this relationship, the court reasoned, her confinement was not
constitutionally prohibited.  Id.  We do not read Preston and
Gorena so broadly.

We
first note that Buller was the independent executrix of her husband’s estate
and consequently “a holder of property of a judgment debtor[.]”  See Buller
I, 806 S.W.2d at 226.  She was not a holder of property belonging to
the judgment creditor that had sued her.  See id.; see
also Tex. Prob. Code Ann. § 37 (Vernon
2003) (estate of testate decedent vests immediately in devisees, but
independent executor has right to possession of estate).  Moreover, the
holdings in Preston and Gorena do not turn on, and
the court does not address, whether the contemnor was a fiduciary by virtue of
his holding the property of another.  The critical facts were that Preston and
Gorena possessed the property of another but refused to deliver it to the
rightful owner, despite being ordered to do so.  And even if fiduciary duty had
been the basis for the court’s holdings in those cases, we have been unable to
locate any Texas case holding that an independent executor has a fiduciary
relationship with estate creditors.  Finally, the above quoted language from Buller
II is, in substance, a determination that a fiduciary is not subject to
the constitutional prohibition of imprisonment for debt.  We do not reach the
same conclusion from our reading of the cases cited in Buller II and
other cases addressing the prohibition of imprisonment for debt.[5] 
Consequently, for the reasons we have discussed, we respectfully decline to
follow Buller II here.[6]

 

Disposition

            Because
we have held that the contempt order is void and Byrom is illegally restrained,
we grant Byrom’s petition for writ of habeas corpus and order him
discharged.  Thus, Byrom’s first issue is dispositive, and we need not address his
remaining issues.  See Tex. R.
App. P. 47.1.  All pending motions are overruled as moot.

 

                                                                                                    
JAMES T. WORTHEN                                                                                                       Chief
Justice

Opinion delivered July 14, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

(PUBLISH)

 









            [1]  The record reflects that the Denton County Probate
Court had awarded $27,551.93 in fees to Coker in the guardianship proceeding.  

 





                [2] 
Neither the April 3 order or the April 23 order is part of the record in this
proceeding.

 

 





                [3] 
Because we are granting habeas relief, we need not address the trial court’s
requirement that, to purge himself of the contempt, Byrom must pay Anderson’s
attorney’s fees and expenses in the contempt proceeding in addition to making
the required deposit.

 

 





            [4]
For example, Byrom’s motion to reform the original
order removing Byrom as independent executor requested in part that the amount
of the deposit, originally set at $622,786.22, be reduced because the previous
order “embrace[d] a much broader portion of the Estate of Ruby Renee Byrom than
is reasonably necessary to protect any litigant herein.”  Moreover, Anderson
states in his response that the $85,000.00 deposit was required pursuant to
section 149C(b) of the Texas Probate Code and refers us to a subsequent order
entered by the respondent, which contains the following finding:

 

“(8)         By
Order of this Court entered December 8, 2008, JERRY BYROM was ordered to
deposit property of the Estate of RUBY RENEE BYROM in the amount of $85,000.00
in the Registry of the Court of Cherokee County, Texas to be used to pay the
judgments awarded Plaintiff [Anderson].”





[5]
 In Buller I, the dissent
predicted that “[e]ven as to any estate assets which Buller has not spent, the
turnover order will ultimately prove unenforceable.  The Texas Bill of Rights
prohibits the trial court from enforcing the turnover order by imprisonment. .
. .  In the present case, enforcement of the turnover order by imprisonment
would fall squarely within the constitutional prohibition.”  Buller I,
806 S.W.2d at 229 (Mauzy, J., dissenting).  In Buller II, Justice
Burgess noted in his dissent that the trial court’s order directed Buller to
turn over a specific sum, which was “nothing more than telling her to pay the
debt.”  In his view, Buller was entitled to the guarantee of article I, section
18, and could not be confined for refusing to deliver the funds.  Buller
II, 834 S.W.2d at 627-28 (Burgess, J., dissenting).

 





[6] 
The court also held that the constitutional
prohibition against imprisonment for debt does not apply “unless the contemn[o]r
demonstrates inability to pay.”  See Buller II, 834 S.W.2d at 626
(citing Pierce v. Vision Invs., 779 F.2d 302, 309 (5th Cir. 1986)
and Ex parte Smyers, 529 S.W.2d 769, 770 (Tex. 1975)).  These
cases hold that a contempt order is not proper if the contemnor is unable to
comply with the order he failed to obey.  See Pierce, 779
F.2d at 310; Smyers, 529 S.W.2d at 769–70.  According to the
dissent in Buller I, the express language of the 1836 Republic of
Texas Constitution required inability to pay, but this language has been
included in subsequent state constitutions.  Buller I, 806 S.W.2d
at 229.