**In re David L. MONTGOMERY.**

No. 09–04–137 CV.

Court of Appeals of Texas, Beaumont.

Submitted on April 8, 2004.

Decided June 17, 2004.

Donald L. Wyatt Jr., Johnson & Wyatt, P.C., The Woodlands, for relator.

Kristin Bays, J. Randal Bays, Conroe, for real parties in interest.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

By petition for writ of habeas corpus, relator David L. Montgomery requests relief from a judgment of contempt. The real parties in interest, Pope Montgomery, Architects & Builders, L.L.C., and Tom Pope filed a motion for contempt asserting

Montgomery's failure to comply with turnover orders.[1] Montgomery raises the following five questions in his petition:

1. Has the trial court denied Relator due process by incarcerating him for failing to turn over money to pay a debt contrary to Article 1 § 18 of the Texas Constitution?

2. Has the trial court denied Relator due process where he is incarcerated for failure to pay money which had not been first fixed in his commitment and Show Cause Order?

3. Can the trial court continue to hold Relator where his commitment has been effectively converted from civil contempt to criminal contempt without due process?

4. Is Relator denied due process of law where he is incarcerated for civil contempt for violation of a void order requiring the performance of third parties?

5. Is Relator incarcerated in violation of his due process rights where his attorney was ineffective in assisting him[?]

The contempt judgment followed an evidentiary hearing. At the conclusion of the hearing, the judge orally announced her findings and specified a number of violations of the turnover orders. These findings were subsequently memorialized in the judgment for contempt. The finding at the center of relator's first three issues reads as follows:

2. David L. Montgomery violated those Orders in the following respects:

January 12, 2004 Order

1. All cash in the control or possession of David L. Montgomery.

—The Court finds that David L. Montgomery should have in his possession or subject to his control, and therefore should have turned over cash. Specifically, the Court finds that David L. Montgomery received $60,000 from the sale of the property with a physical address of 23 Woodhaven Wood, The Woodlands, Texas to Donna Cook on or about October 27, 2003, and that he received $40,000 from Margie Finley in settlement of his divorce. The [C]ourt further finds that no expenses, other than monthly expenses, should be deducted from those amounts. The [C]ourt further finds that David L. Montgomery's monthly expenses, as described in his Amended Bankruptcy Schedules, was $4358 per month. Deducting that sum for the months of November 2003, December 2003, and January 2004 from that amount, the Court finds that David L. Montgomery should have, but failed to turn over $86,926.

The provision of the January 12, 2004, turnover order found by the judge to have been violated by relator, as referenced above, reads as follows: "1. All cash in the control or possession of David L. Montgomery and all cash in the control or possession of David L. Montgomery's spouse[.]"[2] The judge found six other violations, all of which involved Montgomery's failure to turnover various docu-

---

1. There is no indication relator filed an appeal from any of the turnover orders in question, or from the $1,197,340.20 judgment signed on July 7, 2003.

2. At the time of the issuance of the January 12, 2004, turnover order, relator was divorced, so relator was not held in violation of that portion of the turnover provision concerning cash in the control or possession of his "spouse."

ments. The judge found all of Montgomery's violations were done "with the wilful intent to violate the Orders." The contempt judgment provides in part as follows:

> It is further ORDERED that David L. Montgomery is in civil contempt of this Court, and that David L. Montgomery shall be confined in the Montgomery County Jail indefinitely, with his release conditioned upon full compliance with the Court's Orders as described above.

> It is further ORDERED that upon notice of David L. Montgomery's counsel and/or Tom Pope and Pope Montgomery, Architects and Builders, L.L.C. counsel, this Court will hold a compliance hearing and, if it finds from the credible evidence that David L. Montgomery has purged himself of all acts of contempt, will order his release.

■ This original habeas corpus proceeding is a collateral attack on the contempt judgment. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967); *In re Markowitz*, 25 S.W.3d 1, 2 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding). A writ of habeas corpus will issue if a contempt order is void because it deprives the relator of liberty without due process of law, *see Ex parte Swate*, 922 S.W.2d 122, 124 (Tex.1996), or because the order of contempt was beyond the power of the court to issue. *See Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980); *In re Johnson*, 996 S.W.2d 430, 432 (Tex.App.-Beaumont 1999, orig. proceeding).

■ Criminal contempt is punishment for disobedience that constitutes an affront to the dignity and authority of the court. *Ex parte Werblud*, 536 S.W.2d 542, 545–46 (Tex.1976). Civil contempt, by contrast, is remedial and coercive in nature; one may procure release by compliance with the provisions of the order of the court. *Id.* The contempt judgment here is civil. Relator's release is conditioned upon compliance with the various turnover orders.

■ We address issue two first.[3] A contemnor is entitled to procedural due process. *Ex parte Johnson*, 654 S.W.2d 415, 420–21 (Tex.1983). In order for a party to be subject to contempt for disobeying a court order, the order must give reasonable notice of the terms of compliance in clear, specific and unambiguous language so that the person will readily know what duties and obligations are imposed. *See Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex.1995); *Ex parte Price*, 741 S.W.2d 366, 367 (Tex.1987); *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967).

■ The January 12, 2004, turnover order commands relator to deliver "[a]ll cash in the control or possession of" relator to the specified constable "no later than 2:00 o'clock P.M., Central Standard Time, on January 19, 2004." The turnover order was granted *ex parte;* it is unlikely relator would have been aware of any particular context or scope made the basis for issuance of the order. The order could be interpreted broadly as requiring relator to go to all financial institutions which held any cash he had the legal ability to with-

---

**3.** Because we decide this case under issue two, we need not determine at this time whether imprisonment conditioned on the turnover of "all cash" to pay a judgment is a violation of TEX. CONST. art. I, § 18. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex.2003); *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999); *In re Nunu*, 960 S.W.2d 649, 650 (Tex.1997); *Ex parte Hall*, 854 S.W.2d 656 (Tex.1993); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 n. 5 (Tex.1991); *Ex parte Yates*, 387 S.W.2d 377 (Tex.1965); *compare In re Franklin*, No. 09–98–016–CV, 1998 WL 122719 (Tex.App.-Beaumont March 19, 1998, orig. proceeding)(not designated for publication), with *Ex parte Buller*, 834 S.W.2d 622 (Tex.App.-Beaumont 1992, orig. proceeding).

draw, withdraw all the cash and possibly close the accounts, and deliver all cash from every source of access to the designated constable at the designated time. But the order does not clearly identify a specific cash sum to be turned over. Without reference to a specific sum determined to be in his possession or control and ordered to be turned over, relator would not have a "reasonable opportunity to meet [any subsequent contempt] charges by way of defense or explanation." *See Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). And a turnover order must identify specific non-exempt property determined to be in the possession of the judgment debtor or subject to debtor's control. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(b)(1) (Vernon Supp.2004); *Roebuck v. Horn*, 74 S.W.3d 160, 163–165 (Tex.App.-Beaumont 2002, no pet.); *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 324 (Tex.App.-Dallas 1997, writ denied). The contempt judgment here concludes that relator "should" have had cash, not that he did in fact have a sum certain in his possession or control. We conclude the "[a]ll cash" provision of the January 12, 2004, turnover order underlying the contempt judgment was not sufficiently specific to support contempt for failure to turnover the sum of $86,926.00. Issue two is sustained. We need not address issues one and three, as they attack the same provision we strike under issue two.

Issue four contends that relator cannot be held in contempt for violations seven and eight of the judgment of contempt because of his inability to perform the required acts. The turnover order required relator to produce records relating to Trinity Heights Development, Inc. The

trial court found relator had access and control over these items and failed to turn them over as ordered. Relator contends it is undisputed he transferred his interest in Trinity Heights to his ex-wife pursuant to their divorce settlement.

■ Relator cannot be incarcerated indefinitely for civil contempt if he has no ability to perform the condition required for release. *See Ex parte Rojo*, 925 S.W.2d 654, 655 (Tex.1996). However, subsequent to the filing of relator's petition for writ of habeas corpus, relator filed with this Court a large number of documents, including documents concerning Trinity Heights Development, Inc. This appears inconsistent with relator's argument that he is unable to produce the required documents.[4] The trial court should determine whether relator is now in compliance or is unable to comply. The judgment of contempt expressly provides for a compliance hearing. Issue four is overruled.

Issue five contends relator was not afforded effective assistance by his two trial counsel during the evidentiary hearing. Relator's lone authority under this issue stands for the proposition that a criminal contempt defendant should be admonished prior to a criminal contempt hearing that the defendant is entitled to have counsel appointed if the defendant is unable to afford counsel. *See Ex parte Goodman*, 742 S.W.2d 536, 541 (Tex.App.-Fort Worth 1987, orig. proceeding). Other than this general proposition, relator does not refer us to any law applying ineffective assistance of counsel standards to civil contempt proceedings.

■ Assuming he was entitled to effective assistance of counsel, relator has not shown he was denied a fair hearing. Rela-

---

**4.** It is unclear whether the various documents filed with this Court on April 6, 2004, comply fully with the directives contained in the turnover orders. However, the record before us does not "conclusively establish" relator's involuntary inability to perform. *See Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex.1976, orig.proceeding).

tor does not provide us with any structured analysis under this issue but merely points out certain instances of conduct by trial counsel. Two of the instances are not supported by the record before us. A defendant must prove not only that counsel's performance was deficient but also that the errors resulted in a trial whose result is unreliable. *In re M.S.,* 115 S.W.3d 534, 545 (Tex.2003). There is no showing that any alleged deficient performance by either or both trial counsel deprived relator of a fair trial. *See generally, In re M.S.,* 115 S.W.3d at 545 (citing *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 in termination of parental rights case). Relator has failed to meet this burden. Issue five is overruled.

The trial court found relator in contempt for specific violations separately set forth in the judgment, and then ordered him confined until he complied fully with each of the enumerated provisions. Only one portion of the contempt order is erroneous. *See In re Patillo,* 32 S.W.3d 907, 909 (Tex. App.-Corpus Christi 2000, orig. proceeding); *In re Aarons,* 10 S.W.3d 833, 834 (Tex.App.-Beaumont 2000, orig. proceeding). That part of the contempt judgment confining relator until he delivers $86,926, as described under violation one of the contempt judgment, is severed and stricken. As modified, the remainder of the judgment of contempt is affirmed. Relator has the right under the contempt judgment to obtain his release by showing he is now in compliance with the judge's orders, or is unable to comply.

Our previous order granting bail is withdrawn and relator is remanded to the custody of the Montgomery County Sheriff.

WRIT DENIED.